UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROLAND SPEIGHT,<br><br>Petitioner,<br><br>v.<br><br>BERNARD WARNER,<br><br>Respondent. | CASE NO. C15-0605JLR<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

This matter comes before the court on Petitioner Roland Speight's petition for a writ of habeas corpus (Petition (Dkt. # 1)), the report and recommendation of United States Magistrate Judge Mary Alice Theiler (R&R (Dkt. # 14)), and Respondent Bernard Warner's objections, on behalf of the State of Washington, to the report and recommendation (Obj. (Dkt. # 15)). Having carefully reviewed the foregoing, the State's answer to Mr. Speight's petition (Ans. (Dkt. # 9)), Mr. Speight's response to the State's objections (Resp. (Dkt. # 16)), the balance of the record, and the governing law, the court

ORDER- 1

ADOPTS in part and REJECTS in part the report and recommendation. Because the court reaches the same result as the report and recommendation, the court GRANTS Mr. Speight's habeas petition.

## II.   BACKGROUND

Mr. Speight filed this habeas petition seeking a new trial on his conviction for two counts of rape in the second degree. (*See* Petition ¶ 5.)[1] In Mr. Speight's trial, the court issued a jury questionnaire on which prospective jurors were permitted to request individual questioning. (*Id.* ¶ 12(a).) Fourteen prospective jurors requested individual questioning, and the judge interviewed them in chambers to determine their suitability as jurors.[2] (*Id.*) This in-chambers questioning implicated Mr. Speight's right to a public trial under the Washington State Constitution. (*Id.*)

After a jury convicted Mr. Speight, he appealed his case to the Washington Court of Appeals and did not raise the public trial issue. (*Id.*; *see also* St. Ct. Record, Ex. 4 ("Appellant's Brief").) He filed his opening brief on February 28, 2006, and the Washington Court of Appeals affirmed his conviction on November 27, 2006. (*See* Appellant's Brief at 1; St. Ct. Record, Ex. 6A ("Wash. Ct. App. Opin.") at 7.)

In May 2007, Mr. Speight filed a personal restraint petition that raised the public trial issue for the first time. (Petition ¶ 12(a); St. Ct. Record, Ex. 7 ("Pers. Restr.

---

[1] The report and recommendation presents a more exhaustive version of the facts to which neither party objects. (*See* R&R at 2-4; Obj.)

[2] Mr. Speight and the attorneys involved in the trial were present during the in-chambers voir dire. (St. Ct. Record (Dkt. # 10), Ex. 27 ("5/24/05 Tr.") at 9:16-18, 10:17-20.)

ORDER- 2

Petition") at 1.) The Washington Court of Appeals certified the petition to the Washington Supreme Court, which found that the trial court's private voir dire violated Mr. Speight's right to a public trial. *In re Speight*, 340 P.3d 207, 208 (Wash. 2014); (Petition ¶ 12(a); St. Ct. Record, Ex. 15 ("Order of Cert.") at 1.) This finding demonstrated cause, as required by the governing law, but Mr. Speight still had to demonstrate prejudice from the public trial violation. *In re Speight*, 340 P.3d at 207. Typically, Washington courts "presume prejudice for a petitioner who alleges a public trial right violation through an ineffective assistance of appellate counsel claim." *Id.* at 209. However, because Mr. Speight raised the public trial right violation for the first time on collateral review, he was not entitled to a presumption that the public trial violation was prejudicial and instead had to show "actual and substantial prejudice" from the court closure. *Id.* (citing *In re Coggin*, 340 P.3d 810 (Wash. 2014)); (Petition ¶ 12(a).) The Washington Supreme Court concluded that Mr. Speight was not "actually and substantially prejudiced" by the public trial right violation and denied his personal restraint petition. *In re Speight*, 340 P.3d at 209; (Petition ¶ 12(a).)

Mr. Speight argues before this court that he received ineffective assistance of appellate counsel on his direct appeal to the Washington Court of Appeals because his appellate counsel failed to raise the public trial issue. (Petition ¶ 12(b).) Because he did not raise ineffective assistance of appellate counsel in his personal restraint petition, Mr. Speight has procedurally defaulted by failing to exhaust his state remedies. (*Id.*); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Mr. Speight therefore must show cause and actual prejudice for raising this issue for the first time in a federal habeas

petition. *Coleman*, 501 U.S. at 751. Mr. Speight contends that the ineffective assistance of his postconviction counsel caused his failure to exhaust, and that he was prejudiced in that he would have been granted a new trial if postconviction counsel had raised the ineffective assistance of appellate counsel.[3] (Petition ¶¶ 12(b)-(d).)

Judge Theiler recommends granting Mr. Speight's habeas petition. (*See* R&R.) Judge Theiler found that (i) appellate counsel was ineffective in failing to raise the public trial claim on appeal, and (ii) the ineffective assistance of postconviction counsel constitutes cause and prejudice sufficient to excuse the otherwise procedurally defaulted habeas action.[4] (*Id.* at 4.) The State timely objected, arguing that Judge Theiler improperly applied the relevant standard for ineffective assistance of appellate counsel. (Obj. at 4.) Specifically, the State argues that appellate counsel's "choice of issues was reasonable" in light of the law and facts at the time, and that therefore Mr. Speight is not entitled to relief for ineffective assistance of appellate counsel. (*Id.* at 4.)

### III.   ANALYSIS

#### A.   Standard of Review

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must

---

[3] Mr. Speight had the same appellate counsel and postconviction counsel. (Petition ¶¶ 16(d)-(e).)

[4] Judge Theiler also found that "[a]n evidentiary hearing is not required" to make this determination because the record is conclusive as to the relevant facts. (R&R at 28; *see also id.* at 24 ("[T]he Court notes that petitioner does not bring forth any new evidence in support of his claim, nor does petitioner request or the record reveal any need for an evidentiary hearing.")); 28 U.S.C. § 2254(e)(2) (limiting the circumstances under which a federal court may hold an evidentiary hearing in a habeas case). The court agrees that no evidentiary hearing is warranted.

ORDER- 4

determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id.*

B.   **The State's Objection**

The State raises one objection to Judge Theiler's report and recommendation: that Judge Theiler applied an improper test to determine whether appellate counsel's performance was constitutionally deficient. (Obj. at 1.) The State reasons that at the time appellate counsel filed her brief, in February 2006, the law was unclear on whether a defendant-initiated closure of the courtroom can violate a defendant's public trial right. (*Id.*) According to the State, not until the Washington Supreme Court decided *Easterling* in June 2006 did a Washington appellate court find "a public trial right violation where the party that had requested the closure was a defendant." (*Id.* at 7 (citing *State v. Easterling*, 137 P.3d 825 (Wash. 2006)).) The State concludes that appellate counsel's choice of issues on appeal was reasonable in light of the murkiness of this area in February 2006. (*Id.* at 4.)

//

//

ORDER- 5

Mr. Speight first responds that he did not initiate the courtroom closure and that the State's evidence fails to demonstrate as much.[5] (Resp. at 2-4.) To the extent this is accurate, the State's argument rests on a flawed premise—that Mr. Speight's "counsel initiated the closure of his trial." (Obj. at 1.) In other words, the less Mr. Speight had to do with initiating the public trial violation at issue here, the less conceivable justification appellate counsel had for failing to make the open court argument on appeal. At any rate, Mr. Speight argues, the State's reliance on *Easterling* is misplaced because that case did not reshape the relevant law dramatically and appellate counsel had several opportunities to raise the public trial issue even after the Washington Supreme Court decided *Easterling*. (Resp. at 5-7.) More generally, Mr. Speight argues in support of Judge Theiler's conclusion that appellate counsel performed deficiently by failing to raise the public trial issue. (*Id.*)

1. Deficient performance of appellate counsel

Whether appellate counsel performed deficiently is relevant to Mr. Speight's habeas petition in two ways. Its first application relates to the two-prong *Strickland* standard that governs ineffective assistance of appellate counsel claims. *See Pollard v.*

---

[5] Mr. Speight raises this argument principally to rebut the State's contention that Mr. Speight "invited" the public trial violation. (Resp. at 2-4.) Judge Theiler considered and rejected the argument that Mr. Speight invited the violation in her report and recommendation. (R&R at 15-16.) The State does not object to this conclusion (*see generally* Obj.), and the court finds Judge Theiler's analysis of this issue thorough and persuasive (*see* R&R at 15-17). Accordingly, the court declines to reconsider the report and recommendation's conclusions on this issue. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Reyna-Tapia*, 328 F.3d at 1121. The court discusses Mr. Speight's response on this subject only to the extent it is relevant to the State's objection.

ORDER- 6

*White*, 119 F.3d 1430, 1435-37 (9th Cir. 1997) (extending *Strickland v. Washington*, 466 U.S. 668 (1984), to claims pertaining to appellate counsel). To demonstrate ineffective assistance of appellate counsel, Mr. Speight must show "that his appellate counsel's performance was constitutionally deficient and that it was prejudicial to his defense." *Id.* at 1435. The State does not object to the report and recommendation's conclusion that Mr. Speight has established prejudice. (*See generally* Obj.; *see also* R&R at 27.) However, Mr. Speight must demonstrate deficient performance—that counsel's performance "fell below an objective standard of reasonableness." *Pollard*, 119 F.3d at 1435 (quoting *Strickland*, 466 U.S. at 688).

The State's argument is also relevant to Mr. Speight's effort to excuse his failure to exhaust his state remedies. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."). To excuse this procedural default, Mr. Speight must demonstrate that the underlying claim—ineffective assistance of appellate counsel—is "substantial." *See Van Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013).[6] The substantiality requirement demands only that the claim "has some merit." *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (quoting *Martinez*, 132 S. Ct. at 1318), *overruled on other grounds by McKinney v. Ryan*, --- F.3d ---, No. 09-99018,

---

[6] *Van Nguyen* incorporates the four-part test from *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012), as altered in *Trevino v. Thaler*, --- U.S. ---, 133 S. Ct. 1911, 1918 (2013). The State's objection contests only the first *Martinez* requirement, which demands that the underlying claim is "substantial."

ORDER- 7

2015 WL 9466506, at *16 (9th Cir. Dec. 29, 2015); *see also Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (quoting *Martinez*, 132 S. Ct. at 1319) ("Stated otherwise, a claim is 'insubstantial' if 'it does not have any merit or . . . is wholly without factual support.'" (alteration in original)); *Murray v. Schriro*, 745 F.3d 984, 1017-18 (9th Cir. 2014) (performing the *Strickland* analysis to determine whether the defendant had a "substantial claim" of ineffective assistance of counsel, so as to excuse procedural default). As the above analysis demonstrates, the *Martinez* substantiality requirement is more permissive than the *Strickland* deficient performance requirement.

The State argues that appellate counsel's performance was not deficient, but the State does not clarify whether it directs that argument at Judge Theiler's conclusion regarding deficient performance or her conclusion regarding the "substantiality" of Mr. Speight's ineffective assistance of appellate counsel claim. (*See* Obj.; *see also* Answer at 14, 18-30 (arguing that appellate counsel was not ineffective and therefore Mr. Speight cannot show cause for failing to exhaust state remedies); *id.* at 36-37 (incorporating the argument from pages 18 to 30 to contend that appellate counsel's performance was not deficient under *Strickland*).) Given the procedural posture of his case, Mr. Speight must demonstrate both deficient performance and the "substantiality" of his claim. Accordingly, the court analyzes the State's argument as applied to the more stringent *Strickland* deficient performance standard.

2. The impact of *Easterling*

Judge Theiler found it persuasive that the State had not "point[ed] to any case or other factor occurring between the filing of the direct appeal [in February 2006] and the

ORDER- 8

filing of the personal restraint petition a year and two months later that would explain why counsel did not earlier pursue the public trial right claim." (R&R at 17.) In its objection, the State acknowledges this "oversight" and refers this court to *Easterling*, which the Washington Supreme Court decided on June 29, 2006. (Obj. at 7 (citing *Easterling*, 137 P.3d at 825).) The State contends *Easterling* is the first time a Washington appellate court "found a public trial right violation where the party that had requested the disclosure was a defendant." (*Id.*) The court first addresses *Easterling* and then turns to the remainder of the State's objection.

In *Easterling*, Mr. Jackson, Mr. Easterling's codefendant, moved to sever his trial from Mr. Easterling's. *Easterling*, 137 P.3d at 827. Mr. Easterling neither joined the motion nor filed his own motion. *Id.* When the court indicated its inclination to deny the severance motion, Mr. Jackson requested to further argue the motion in a closed courtroom, outside of the presence of Mr. Easterling. *Id.* Without seeking input from Mr. Easterling, the court cleared the courtroom, including Mr. Easterling, and ordered the record to be sealed. *Id.* In the closed proceedings, Mr. Jackson and the prosecution agreed that further plea negotiations would be fruitful, and eventually Mr. Jackson accepted a plea and testified against Mr. Easterling, who was found guilty. *Id.*

Mr. Easterling argued to the Washington Supreme Court that "he had been deprived of his constitutional right to be present at his trial and/or his constitutional right to an open public trial." *Id.* The Washington Supreme Court agreed with the latter contention, holding that under the Washington State Constitution, "a defendant's right to

a public trial extends to courtroom consideration of pretrial motions made prior to severance by a criminal codefendant." *Id.* at 832.

The State argues *Easterling* enhanced the merit of Mr. Speight's public trial argument because it was the first time a Washington appellate court "found a public trial right violation where the party that had requested the disclosure was a defendant." (Obj. at 7.) This statement, however true, is misleading regarding the impact *Easterling* had on public trial right jurisprudence in Washington. The *Easterling* Court recognized the novelty of the case but not in the sense the State argues. Prior Washington Supreme Court decisions on the public trial right "presented clear cut [sic] facts which compelled [the Court] to hold that the improper closure violated the affected defendant's right to a public trial." *Easterling*, 137 P.3d at 829 (citing *State v. Bone-Club*, 906 P.2d 325 (Wash. 1995), *In re Orange*, 100 P.3d 291 (Wash. 2004), and *State v. Brightman*, 122 P.3d 150 (Wash. 2005)); *see also infra* Part III.B.3. The Court recognized that in those prior cases either the State requested closure (*Bone-Club*) or the trial court ordered closure sua sponte (*Orange* and *Brightman*). *Easterling*, 137 P.3d at 829. The Court contrasted these scenarios with *Easterling*, finding it important that in *Easterling* "a *co*defendant requested the courtroom closure." *Id.* (emphasis added) ("Neither the State nor Easterling cite to any precedent from this State or other jurisdictions indicating whether or not a codefendant's pretrial motions implicate the other codefendant's public trial right."); *see also id.* at 830 (recognizing the "lack of precedent on this narrow issue").

The remainder of the *Easterling* opinion reinforces this narrow reading of the case. *Easterling* hinged on the unique question of whether clearing the courtroom for a nonsevered codefendant's motion implicates the public trial rights of the other codefendant. The Court framed the State's argument this way, *id.* at 829 ("[T]he State contends that Easterling's public trial guarantee was not implicated by the improper closure because the pretrial motions made by the codefendant Jackson did not pertain to Easterling's trial . . . ."), and based its ruling largely on Mr. Easterling and Mr. Jackson's status as codefendants, *id.* at 830 ("Our holdings are compelled by the record, which demonstrates that Easterling and Jackson were charged together pursuant to the same information and were being jointly tried at the time of the courtroom closure."). The Court made these bases clear in its conclusion: "Because we conclude that a defendant's right to a public trial extends to a courtroom consideration of pretrial motions made prior to severance by a criminal codefendant, we hold that Easterling's right to a public trial" was violated. *Id.* at 832.

Based on this reading, the court concludes *Easterling* had minimal impact on the law governing Mr. Speight's appeal. (*Cf.* Obj. at 7 ("In February 2006, the state's appellate courts had up to that point never found a public trial right violation where the party that had requested the closure was a defendant. On June 29, 2006, almost five months after Spieght's [sic] appellate counsel filed her opening brief (and 15 days after she filed her reply brief), the state court finally addressed this situation for the first time in *Easterling*." (footnote omitted)).) Accordingly, the court finds unpersuasive the

ORDER- 11

State's argument that *Easterling* altered the pertinent legal landscape between the direct appeal and the personal restraint petition. (*See id.*)

### 3. The reasonableness of appellate counsel

The court now turns to the State's more general objection—that the report and recommendation misapplies the law regarding ineffective assistance of appellate counsel.[7] (*Id.* at 4.) To demonstrate that his appellate counsel's performance was constitutionally deficient, Mr. Speight "must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness,' and that [her] acts or omissions were not the 'result of a reasonable professional judgment.' The reasonableness of counsel's performance is evaluated as of the time of the conduct and in light of the facts of the case." *Pollard*, 119 F.3d at 1435 (quoting *Strickland*, 466 U.S. at 688, 690) (internal citations omitted). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

The report and recommendation reviewed the progression of Washington case law on courtroom closure, especially when the closure relates to voir dire, and concluded that appellate counsel was ineffective in failing to raise the issue in the February 2006

---

[7] To reiterate, this argument is relevant to this case in two ways: *Strickland*'s deficient performance prong and *Martinez*'s "substantiality" requirement. *See supra* Part III.B.1. As Mr. Speight recognizes, the procedural posture of the case means he must meet both standards. *See id.*; (Petition ¶ 12.) The following analysis therefore applies the State's objection to the stricter of the two applicable standards—*Strickland*—but is determinative on both issues.

ORDER- 12

opening brief. (R&R at 13-18.) The State objects that appellate counsel met the *Strickland* standard and that the report and recommendation misapplies it. (*See* Obj. at 4 (citing R&R at 18) ("The correct test for determining whether appellate counsel provided ineffective assistance is whether her choice of issues on appeal was reasonable, not whether case law existed that provided a 'sufficient basis' to raise other claims.").)[8] The State argues that Washington caselaw on the public trial right was—and remains—murky when a defendant initiates courtroom closure. (*See* Obj. at 9 (citing *State v. Momah*, 217 P.3d 321 (Wash. 2009)).) The court disagrees.

At the time of Mr. Speight's direct appeal, the caselaw in Washington made clear that the trial court violated Mr. Speight's right to a public trial and this structural error entitled him to a new trial. Washington caselaw on trial closures begins with *Bone-Club*, in which the Washington Supreme Court laid out five guidelines that trial courts must consider before closing the courtroom.[9] 906 P.2d at 327-28. Central to these guidelines

---

[8] The report and recommendation states, "As demonstrated by the arguments raised in the personal restraint petition, the case law existing at the time of the direct appeal provided a *sufficient basis* upon which to proffer a public trial right claim." (R&R at 18 (emphasis added).) The State characterizes the italicized phrase as a misstatement of the standard for ineffective assistance of appellate counsel. (*See, e.g.*, Obj. at 1, 4.) The court agrees and rejects the above language. However, as explained in this order, the court adopts the report and recommendation in all other respects and reaches the same conclusion.

[9] Those five guidelines are (1) the proponent of closure or sealing must make some showing of a compelling interest, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to the asserted right; (2) anyone present when the closure motion is made must be given an opportunity to object to the closure; (3) the proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests; (4) the court must weigh the competing interests of the proponent of closure and the public; and (5) the order must be no broader in its application or duration than necessary to serve its purpose. *Bone-Club*, 906 P.2d at 327-28.

ORDER- 13

1  is the understanding that "[a]lthough the public trial right may not be absolute, protection
2  of this basic constitutional right clearly calls for a trial court to resist a closure motion
3  except under the most unusual circumstances." *Id.* at 328.
4      In 2004, the Washington Supreme Court extended *Bone-Club*, which addressed a
5  pretrial suppression hearing, to the voir dire setting. *Orange*, 100 P.3d at 295 (citing
6  *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505 (1984)). The Court reasoned that
7  *Orange* mirrored *Bone-Club* in that the court's closure was at least "temporary" and
8  "full." *Id.* at 297; *see also Bone-Club*, 906 P.2d at 327. The Court also noted that the
9  "trial court's ruling unequivocally excluded the defendant's friends and family from the
10 courtroom during voir dire." *Orange*, 100 P.3d at 297. After concluding that only one of
11 the *Bone-Club* guidelines was met, the Court "adopt[ed] verbatim the holding in *Bone-*
12 *Club*: 'We hold the trial court's failure to follow the five-step closure test . . . violated
13 Defendant's right to a public trial . . . .'" *Id.* at 299 (second alteration in original)
14 (quoting *Bone-Club*, 906 P.2d at 329); *see also id.* at 299 n.1 ("*Bone-Club* noted the
15 absence of a trial court record showing any consideration of Defendant's public trial
16 right." (internal quotations omitted)).
17     *Orange*'s interpretation of *Bone-Club* should have left little doubt in the mind of a
18 reasonable attorney that the trial court violated Mr. Speight's public trial right. As in
19 *Orange*, Mr. Speight endured a "temporary" and "full" closure that "unequivocally
20 excluded" his "friends and family from the courtroom during voir dire." *Id.* at 297.
21 Because "[p]rejudice is presumed where a violation of the public trial right occurs," Mr.
22

ORDER- 14

1 Speight would have been entitled to a new trial. *Bone-Club*, 906 P.2d at 329 (citing *State v. Marsh*, 217 P. 705, 706 (Wash. 1923)).

*Brightman*, decided in 2005, made explicit *Orange*'s implications:

> While the *Bone-Club* court addressed the complete closure of the courtroom for a pretrial suppression hearing, not jury selection, it is well settled that the right to a public trial also extends to jury selection. *Orange*, 152 Wash.2d at 804, 100 P.3d 291 (citing *Press–Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 505, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). This court has noted that a closed jury selection process harms the defendant by preventing his or her family from contributing their knowledge or insight to jury selection and by preventing the venire from seeing the interested individuals. *Orange*, 152 Wash.2d at 812, 100 P.3d 291. Thus, in order to support full courtroom closure during jury selection, a trial court must engage in the *Bone-Club* analysis; failure to do so results in a violation of the defendant's public trial rights. *See id.* at 809, 100 P.3d 291.

122 P.3d at 155. The only evidence that the trial court considered Mr. Speight's right to an open courtroom during voir dire is the weak inference one can draw from statements such as, "It is required that the attorneys and defendant be present for this process." (5/24/05 Tr. at 10:17-19.) The trial judge indisputedly failed to make findings on the *Bone-Club* guidelines before excluding the public from voir dire. With *Orange* and *Brightman* on the books, it was deficient performance for appellate counsel to fail to raise these issues.

Contrary to the State's argument, the issues appellate counsel raised instead of the public trial right do not support the conclusion that appellate counsel was reasonable. (*See* Obj. at 7 (pointing out that the report and recommendation fails to "address the reasonableness of the issues that appellate counsel did raise" on appeal).) Appellate counsel raised four issues on appeal: (1) whether the trial court's instruction on the

burden of proof was proper; (2) whether the court's admission of Mr. Speight's statement that his community perceived him as a "crazy killer on drugs" was unduly prejudicial; (3) whether Mr. Speight was deprived of his right to a jury trial when the lead investigator testified that he believed appellant committed the charged offense; and (4) whether the combination of errors (1), (2), and (3) deprived Mr. Speight of his right to a fair trial. (*See* Appellant's Brief at 1-2.) The State contends that each of these four issues conceivably had merit, and that therefore "[i]t was reasonable for appellate counsel to decide not to make [the opening brief on appeal] even longer [than 31 pages] by adding issues that were not clearly supported by then-existing case law."[10] (Obj. at 6); *see also Miller*, 882 F.2d at 1434.

The Washington Court of Appeals summarily rejected the first issue Mr. Speight raised on appeal—improper jury instruction—because Mr. Speight's argument directly conflicted with Washington Supreme Court precedent.[11] (*See* Wash. Ct. App. Opin. at 3-4 ("Our Supreme Court rejected this argument in *State v. Camara*[, 781 P.2d 483 (1989)] . . . . We are obliged to follow Supreme Court precedent, and objections to the rationale of *Camara* must be brought before that Court.").) The second issue Mr. Speight raised on appeal received similar dismissive treatment from the Court of Appeals. (*See id.* at 4-5.) Reviewing the trial court's ruling on the admissibility of evidence, the Court

---

[10] The Washington Rules of Appellate Procedure permit appellants up to 50 pages in their opening briefs. *See* Wash. R. App. P. 10.4(b).

[11] Although the State expressly argues that the second and third issues raised on appeal had merit, the State's objection tellingly omits any argument that the first issue raised on appeal was potentially meritorious. (*See* Obj. at 6-7.)

ORDER- 16

of Appeals reasoned that the evidence, which went to motive, was "clearly relevant." (*Id.* at 5.) Accordingly, the Court of Appeals concluded the trial court "misstated the law" but "did not misapply it." (*Id.*) These two issues, which warranted scarcely any serious analysis from the Court of Appeals, occupied 13 out of the 18 pages Mr. Speight devoted to argument in his opening brief. (*See* Appellant's Brief at 13-30.) This belies the State's argument that "[i]t was reasonable for appellate counsel to decide not to" lengthen the 31-page opening brief because appellate counsel "focused her efforts on issues that were clearly supported by existing case law and that were somewhat eye-catching." (Obj. at 6.)

The State also relies extensively on *Momah*, a 2009 case in which the Washington Supreme Court held that the courtroom closure struck the appropriate balance between the defendant's right to a public trial and his right to a fair trial. *Momah*, 217 P.3d at 329. According to the State, *Momah* evinces the reasonableness of appellate counsel's choice to omit the public trial argument. (Obj. at 9.)

The State's analogy to *Momah* is flawed. Although the State repeatedly asserts Mr. Speight "initiated" the courtroom closure (*Id.* at 1, 4, 5, 7, 9, 10), it points to nothing in the record that demonstrates as much. The State's only citations to the record on this issue identify lines of transcript in which Mr. Speight assented to the use of a jury questionnaire. (*Id.* at 5-6 (citing St. Ct. Record, Ex. 26 ("5/23/05 Tr.") at 5:12-6:11;

//

//

//

ORDER- 17

5/24/05 Tr. at 6:11-15).)[12] Mr. Speight does not argue—nor did Judge Theiler determine—that appellate counsel was ineffective for failing to raise on appeal the use of the jury questionnaire; rather, both conclude that appellate counsel was ineffective for failing to raise the in-chambers voir dire procedure that followed the jury questionnaire. (R&R at 3-4; Resp. at 2); *see also In re Speight*, 340 P.3d at 208 (basing its conclusion on the fact that the trial court did not consider the *Bone-Club* factors "in its decision whether to question individual jurors in chambers"). The State does not identify any point at which Mr. Speight "initiated" in-chambers voir dire, and the cited lines of transcript make no reference to the private questioning of jurors. (*See generally* Obj.) The closest the State comes is arguing that a jury questionnaire "is a common procedure in sex offense cases," which often entails "subsequent questioning of individual jurors outside the presence of the public and other jurors." (*Id.* at 5.)

This argument differs significantly from *Momah*, which references several instances in the trial record where the defendant specifically requested the in-chambers voir dire. *See Momah*, 217 P.3d at 328. "[D]efense counsel made a deliberate choice to pursue in-chambers voir dire to avoid 'contamination' of the jury pool by jurors with prior knowledge of Momah's case." *Id.* at 329. Indeed, defense counsel in *Momah* "argued for the expansion of in-chambers questioning." *Id.* Mr. Momah forced the court

---

[12] Although the trial court mentioned that "the person answering the questions can be interviewed individually," it proceeded to clarify that this meant "not in the presence of other members of the panel." (5/23/05 Tr. at 6:4-6.) Furthermore, the juror questionnaire that the parties contemplated did not discuss holding the questioning in chambers, but only "outside the presence of the other jurors." (St. Ct. Record, Ex. 9, App'x A at 1.)

ORDER- 18

to balance his competing rights to a fair trial—which includes an impartial jury—and to a public trial, and the Washington Supreme Court concluded that the trial court struck an acceptable balance. *See id.* at 327-28. In contrast, the State fails to identify a single instance in the record where Mr. Speight or his trial counsel played a proactive role in initiating in-chambers voir dire. (*See generally* Obj.) The court, having reviewed the record, also fails to identify such an instance. The court therefore finds unconvincing the State's argument that *Momah* demonstrates the lack of clarity surrounding Mr. Speight's public trial claim.

Based on the foregoing analysis, the court finds that a reasonable attorney could not have concluded that the public trial violation was a "weak issue," especially in comparison to those issues that appellate counsel chose to raise. *Miller*, 882 F.2d at 1434. "[A]s of the time of the conduct and in light of the facts of the case," a reasonable appellate attorney could not have declined to raise the public trial issue. *Pollard*, 119 F.3d at 1435. Postconviction counsel raised this issue and prevailed on its merits in the Washington Supreme Court, further bolstering the court's conclusion. (*See* R&R at 27); *supra* Part III.B.2. (rejecting the argument that intervening case law explains this shift). The court therefore co-opts the language of the Washington Supreme Court in *Orange*: "The failure to raise the courtroom closure issue was not the product of 'strategic' or 'tactical' thinking, and it deprived [Mr. Speight] of the opportunity to have the constitutional error deemed per se prejudicial on direct appeal." 100 P.3d at 300.

//

//

ORDER- 19

Having rejected the only objection raised by the State, the court adopts the ultimate conclusion in Judge Theiler's report and recommendation.[13] Appellate counsel performed deficiently by failing to raise the public trial violation, which prejudiced Mr. Speight because the court would have presumed structural error. (*See* R&R at 21, 27.) Although Mr. Speight failed to raise this grounds for relief in his state habeas petition, that failure is excused by the ineffective assistance of postconviction counsel, who failed to raise the ineffective assistance of appellate counsel in the personal restraint petition. (*See id.* at 27.) The court grants Mr. Speight's petition for a writ of habeas corpus.

## IV. CONCLUSION

For the foregoing reasons, the court ADOPTS in part and REJECTS in part the Report and Recommendation (Dkt. # 14) as specified above and GRANTS Mr. Speight's petition for a writ of habeas corpus (Dkt. # 1). The court DIRECTS the Clerk to send copies of this order to counsel and Judge Theiler.

Dated this 1ST day of ~~January~~ February, 2016.

JAMES L. ROBART
United States District Judge

---

[13] The court rejects one discrete statement in the report and recommendation on the basis that it misstates the applicable standard for evaluating whether appellate counsel's performance was deficient. *See supra* Note 8.

ORDER- 20